GENERAL ACCIDENT FIRE & LIFE AS-
SURANCE CORPORATION, Ltd.,
Plaintiff-Appellant,

v.

MARYLAND CASUALTY COMPANY,
Garrell Lloyd Harper, Paul L. Stuffel,
Opal E. Stuffel, Joseph V. Stuffel, Jack
Newland, Joseph Newland, Glenn Allen
Benefiel, James Benefiel, Robert Lay-
man, Marion Edwards, Defendants-Ap-
pellees.

No. 16107.

United States Court of Appeals
Seventh Circuit.

Nov. 30, 1967.

Tony Foster, Grace M. Curry, Indian-
apolis, Ind., Bingham, Summers, Welsh
& Spilman, Indianapolis, Ind., of counsel,
for appellant.

James E. Rocap, Jr., Indianapolis, Ind.,
Dwight F. Gallivan, William D. Seese,
Bluffton, Ind., Gallivan & Hamilton,
Bluffton, Ind., and Rocap, Rocap, Reese
& Robb, Indianapolis, Ind., of counsel,
for appellee.

Before SCHNACKENBERG, KILEY,
and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

General Accident Fire & Life Assur-
ance Corporation, Ltd. instituted a de-
claratory judgment action against the
Maryland Casualty Company, Garrell
Harper, Paul Stuffel, his wife Opal, and
his son Joseph, and six persons injured
in an automobile collision. The action
sought to determine whether General
Accident was obligated to defend Harper
and pay damages claimed by the injured
parties in any actions instituted against
him as a result of the collision in which
he was driving one of the cars. General
Accident became involved in this insur-
ance coverage dispute by issuing an auto-
mobile liability insurance policy to Paul
Stuffel. The policy was known as a
"family policy," covered three automo-
biles, and was issued for one year effec-
tive November 17, 1961. One of the
automobiles covered by the policy was a

1951 Mercury titled in the name of Paul, but equitably owned by his son.

On February 15, 1962, after he reached the age of twenty-one, Joseph sold the Mercury and purchased a 1957 Pontiac in his own name. On the day of the purchase, his mother, Opal, telephoned William Marshall, General Accident's agent. She told him that Joseph had purchased the Pontiac, and she requested coverage for that car. Marshall told her that the Pontiac could be covered under the family policy so long as Joseph remained a resident of the Stuffel household. Later, General Accident issued an endorsement to Paul's policy, eliminating the Mercury and adding the Pontiac. In addition, certain premiums paid for coverage on the Mercury were transferred to provide like coverage for the Pontiac.

On June 22, 1962 Harper, while driving the Pontiac with Joseph Stuffel's permission, was in the accident which resulted in the assertion of damage claims against him by the injured parties. Although Maryland Casualty had issued a policy covering Harper's liability while operating Joseph's Pontiac, that company claimed that General Accident owed primary coverage to Harper, thereby precipitating this action.

The district court heard the case on stipulated facts, holding that General Accident was obligated to defend Harper and to pay any judgment rendered against him to the maximum extent of the coverage in Paul Stuffel's policy. General Accident asserts error by reason of a finding and a conclusion of law based thereon which determined that Harper was covered on General Accident's policy issued to Paul Stuffel at the time he was driving Joseph's Pontiac.[1]

We believe Marshall's statement conditioning coverage of Joseph's Pontiac under his father's policy on Joseph remaining a member of the Stuffel household, considered together with the terms and definitions of General Accident's policy, resolves the disputed issue of coverage with respect to Harper. Since Harper was not a named insured under General Accident's policy, his coverage under that policy depends upon whether the Pontiac was an "owned" or a "non-owned" automobile as those terms are defined in the policy. If the Pontiac came within the former definition, a proposition vigorously contested by General Accident, Harper would be covered under the policy.

A "non-owned" automobile is defined in the policy as one "not owned by or furnished for the regular use of either the named insured or any relative, * * *." By reason of this definition, Joseph's Pontiac was not a "non-owned" automobile since Joseph owned the Pontiac and he was a relative of the named insured, his father. Moreover, "relative" is defined in the policy to mean "a relative of the named insured who is a *resident of the same* household." (Emphasis added.)

If Joseph did not reside in his father's household, an argument for the coverage of his Pontiac as a "non-owned" automobile could be made. Under those circumstances, he would not come within the definition of "relative" and consequently the definition of "non-owned" automobile would literally apply to him. However, Marshall's statement requiring Joseph to remain a member of his father's household to obtain coverage, thereby guaranteeing that the car could not comply with the definition of "non-owned" automobile, forecloses General Accident's argument that it waived the term "relative" in the definition of "non-owned" automobile.

On the other hand, Marshall's statement to Mrs. Stuffel conditioning coverage on Joseph remaining in the household is consistent with the view, urged

---

1. The critical finding reads:

That by the representation, statements and knowledge of William Marshall acting in his capacity as agent for General Accident, said Joseph E. Stuffel became an insured under said policy number ACF 83–978–60 issued by General Accident who could and did give permission to said Garrell Lloyd Harper to operate said 1957 Pontiac.

by Maryland Casualty, that Joseph's Pontiac was covered under his father's family policy as an "owned" automobile (just as his Mercury had been), thereby affording coverage to Harper as a person insured under the policy. We arrive at this conclusion for several interdependent reasons.

First, when Mrs. Stuffel called Marshall, he told her that the car could be put on the family policy. She said that she told him her husband "thought a separate policy would have to be written but Mr. Marshall said it *didn't make any difference that the car was in Joe's name* since he was a member of our household." (Emphasis added.)

Second, General Accident's endorsement, adding the Pontiac to the family policy, recites that the premiums for bodily injury, property damage, and medical payments, paid initially by Paul on his son's Mercury, were to be transferred to provide like coverage on the Pontiac. Moreover, the endorsement states that it is to become part of the family policy issued to Paul. Both statements are consistent with the view that Marshall was treating the Pontiac like the Mercury, as an "owned" automobile.

Third, the definitions and terms of Paul's policy, considered with Marshall's statement requiring that Joseph remain a member of the household, leads to the conclusion that Joseph was an insured "with respect to the owned automobile" as those words are used in the policy. If the Pontiac was an "owned" automobile, Joseph would be a person insured due to the fact that he was a "resident of the same household" as his father, the named insured. Thus Marshall's requirement concerning Joseph's residence is consistent with finding that Joseph was a person insured "with respect to the owned automobile."

The only inconsistency within the terms of the policy in finding Joseph to be a "person insured" "with respect to the owned automobile" is that the definition of "owned automobile" requires that the automobile be owned by the "named insured." But Marshall was aware of the fact that Joseph and not Paul owned the Pontiac. For the reasons just stated, we believe that Marshall's knowledge of the true ownership of the Pontiac together with his requirement conditioning coverage of that car on Joseph's residence, indicate that Marshall, as agent of General Accident, was consciously overlooking that part of the definition of "owned automobile" which required that the automobile be owned by the named insured.[2]

Under the broad coverage endorsement of his father's policy, Joseph, as an insured "with respect to the owned automobile," could afford the alleged tortfeasor Harper with coverage. The endorsement amends the definition of "persons insured" "with respect to the owned automobile" to include "any other person using such automobile, provided the actual use thereof is with the permission of * * * *an adult member of his household.*" (Emphasis added.) Thus Joseph's permission to Harper to operate the Pontiac resulted in Harper being covered under General Accident's policy as a "person insured."

We conclude that the findings and conclusions of the district court were not erroneous. The judgment is affirmed.

## APPENDIX

### PERTINENT PROVISIONS OF THE GENERAL ACCIDENT POLICY

PERSONS INSURED

The following are insureds under Part I:

(a) With respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile, provided the actual

---

2. General Accident concedes that the representations of Marshall were binding upon it

use thereof is with the permission of the named insured;

(b) With respect to a non-owned automobile,

    (1) the named insured,

    (2) any relative, but only with respect to a private passenger automobile or trailer,

    provided the actual use thereof is with the permission of the owner;

\*   \*   \*   \*   \*   \*

## DEFINITIONS

Under Part I:

"named insured" means the individual named in Item 2 of the declarations and also includes his spouse, if a resident of the same household;

"insured" means a person or organization described under "Persons Insured";

"relative" means a relative of the named insured who is a resident of the same household;

"owned automobile" means a private passenger, farm or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile;

"temporary substitute automobile" means any automobile or trailer, not owned by the named insured, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

"non-owned automobile" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile;

\*   \*   \*   \*   \*   \*

## ENDORSEMENT

## BROAD COVERAGE ENDORSEMENT

In consideration of the premium at which this policy is written, the following changes in the printed insuring agreements, exclusions and conditions are hereby made.

## PART I—LIABILITY

\*   \*   \*   \*   \*   \*

PERSONS INSURED

Paragraph (a) Section 2 is changed to read:

(a) any other person using such automobile, provided the actual use thereof is with the permission of the named insured or an adult member of his household;

Paragraph (b) is changed to read:

(b) with respect to a non-owned automobile;

    (1) the named insured,

    (2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner or an adult member of his household;